May it please the Court, Robert Wright for CB & I Constructors, Inc. The issue in this case is whether the government can recover non-economic property damages. My client, CB & I, does not challenge the jury's liability findings on appeal and does not challenge the jury's award of about $7.6 million in economic damages. But the government also obtained an additional award of $28.8 million in non-economic property damages, an award that was almost four times the economic damages. And that award cannot – Was it designated as property damages? The government referred to them as intangible environmental damages, and they are non-economic property damages. No, they're non-economic damages, I gather, in part because the property is public property and won't be sold. If this had been property privately owned and saleable, we could have evaluated economic damages resulting from the fire. I believe the issue is different, and it's not the sale of the property. No, I understand the issue might be different, but I'm trying to figure out whether there's any damage to the property that if we change the context only slightly could be re-characterized as economic damages. And if you have property that's not had a fire, privately owned, that could be sold, there's a fire that burns through acres and acres of the property and you try now to sell it, there will almost certainly have been a reduction in the resale value of that property. Now, because this is publicly owned property and won't be sold, there's no market for it. But it's uncontested, I think, that were this private property, there would be economic damages and a reduction of the resale value. Is that right? Yes, Your Honor. Yeah. So it can't be that there's no remotely analogous economic damages if you just look at harm to property. That's correct, Your Honor. Yeah. Okay. And the courts have dealt with this recurring issue at common law of what do you do when you have property that has no established market value and can the plaintiff recover damages for harm to that property. And the courts have said yes, but the plaintiff must prove a rationally ascertainable value. The plaintiff cannot simply ask the jury to make up a number or award a sentimental or emotional value for that property. There must be a rationally ascertainable value. And there's an instructive case, Robinson v. United States. It's a case in which the government was a party. And it really illustrates these issues well, I think, because that was another fire case. But it was a case in which the government caused the fire. And the plaintiffs were individuals whose home had burned. And they lost a wedding dress. They lost little league trophies, a diary, school art projects. And all those things clearly had a sentimental, emotional value to the plaintiffs. What could be more sentimental than a wedding dress? And the government took the position that to the extent those items lacked an established market value, the plaintiffs could not recover a sentimental, emotional measure of damages. Plaintiffs had to prove some rationally ascertainable value. And that was the position the government took in that case. The district court accepted that position. And the district court was right, because that is what common law requires, that there be a rational, ascertainable value for property that lacks an established market value. Yeah, the trouble with this argument, the reason this is a hard case for me, at least, is that as I see it, it's not that there are only two polar positions, one of them being emotional, sentimental damages that are not recoverable. And the other, economic damages that are recoverable. There are going to be some damages in the middle that are not easily monetizable, but that are not merely emotional. And this is the kind of damage we have here in the middle. And another case that's instructive in dealing with that exact issue is another district court case in the Eastern District of California, United States versus Union Pacific. And that was another forest fire case. The government was a party, but in that case the government was the plaintiff. And what the government did there was to designate expert witnesses to try to quantify these damages. And so, for example, the government had an expert witness who testified regarding the economic value of restoring the burned forest. And the government had another expert witness who testified to the economic value of the habitat impairment damages. So there are ways to address those cases that are in the middle. Well, that just proves the point that a value can be set on these types of harm, right? Absolutely, Your Honor. And so if the jury didn't need an expert to set the value but was able to come to a value without the assistance of an expert, why doesn't that pass muster? It doesn't pass muster because the jury has no ability to come up with that number on its own other than to make it up. What case says that? What case says that a jury is unable to come up with intangible damages without an expert? What case says that? The cases that address that issue in the context of property damage are, for example, the Willard v. Valley Gas and Fuel case. That was a California Supreme Court case from 1915. And there, there was another fire, and the fire burned the plaintiff's home. And the plaintiff was a writer, and he had scrapbooks, but the scrapbooks had no established market value. So what this California Supreme Court held almost 100 years ago is that the plaintiff could recover damages by proving a rationally ascertainable value, a rational value, but it's not enough to ask the jury to make up a damages award. There's also the Universal Pictures v. Harold Lloyd case. That's a Ninth Circuit case. And again, there the Ninth Circuit confronted this issue of what do we do if there's no established market value? Can we allow the plaintiff just to ask the jury to make up a number? And the answer is no. The plaintiff needs to present evidence of a rational value. So what should have been presented here? I mean, one of the government's proposals to the jury was that they set a price per acre in terms of the harm, maybe not diminution in resale value because it's not on the open market. And it looks as though what the jury did was take a number of $1,600 per acre and multiply by the acreage. That's kind of what looks like what they did. That's as best we could figure out what they did. Why is that not enough? It's not enough because the law has embraced a policy that property damages should be proven with more specificity than pain and suffering or emotional distress damages that an individual can recover. We're talking California law, correct? What's your case that says they've got to be proved with more specificity than pain and suffering? And that was my word, but attempting to describe what the courts have done, and the language of the cases is that there needs to be a rationally ascertainable value. The touchstone is really value in these cases, that the courts in property damage cases have required proof of value, that it's not enough just to show the fact of damage. In a case involving- Let me ask you this. I hesitate to interrupt, but I want to make sure we're on the same page with this. There are two possible arguments you can be making. At the moment, you're arguing that the jury wasn't given enough specific information to come up with a rationally ascertainable value. Are you also arguing that this kind of damage is not recoverable at all? We are arguing that the government can recover environmental damages, but it must present evidence of the amount and value of those damages. Clearly, the government can recover environmental damages. That's backing away from some of the arguments I read in the briefs then. No, Your Honor. I don't believe so. In addition, we're arguing that the government cannot recover non-economic damages. So- So how would you characterize environmental harm then? Is that non-economic? Environmental harm clearly can be economic, and the government can recover for environmental harm, provided it presents an economic measure of damages for a harm. Yes. So what do you mean then by economic? I'm trying to understand your position as to what qualifies as economic damage that would, in your view, be recoverable. Economic damage in this case, or say more generally in a fire damage case, could consist of the value of a burned tree, for example. And so that value can be proven in a number of ways because property law is flexible in allowing proof of an economic value. So you could show the restoration cost for that burned tree. You could show any increased operating expenses of the forest in dealing with the burned tree. You could show an economic value of lost use. If there was a decline in market value, you could show that. Or you could show any other rationally ascertainable economic value. What if by law, and this is now hypothetical rather than this case, what if by law the area that was burned by your client was set aside by statute in permanence as wilderness area so that under law no trees can be cut, might even put wilderness areas such that the access for individuals is extremely limited. So at that point is there no economic damages? I mean, the idea is if there's a fire, you don't restore it. You're never going to cut any of the trees and sell them. I mean, this is set aside in permanence as a natural state. In your view, there's no economic harm that can be recovered if that's the situation for the forest? No, that would not be my view. I think we can come up with a hypothetical in which there will be no compensable value, but that is going to be an extremely unusual situation because in the situation where there are trees that have burned, for example, then we know from, for example, the United States versus Union Pacific matter that the government has used methodologies to try to value that type of harm, to put an economic number on that harm so the jury is not asked to make it up. And one way the government has done that is to use something called habitat equivalency analysis. And this court doesn't need to get into all the details of that and whether that would have been appropriate in this case, but there are methodologies, economic methodologies to value damages. And although economics is the dismal science, certainly it is a science that has much more utility than simply asking the jury to make up damages or to come up with some number that's some multiple of the real damages the government proved. Was there testimony about settlements in California of other large-scale fires where damages were settled? Was there testimony about those? No, Your Honor, there was not. And was there testimony about interspersed private holdings in national forests? Those values can be established by comparable sales evidence and so forth. But was there any evidence of that? Are you ñ are you ñ No, no. To answer your question ñ sorry, I interrupted you. But to answer your question, no, there was not such evidence. So you're ñ are you arguing that this is just an insufficient evidence case, that the verdict should be scrutinized because it's not supported by sufficient evidence? Yes, Your Honor. But there's no evidence to support the jury's award of this 28.8 million in non-economic property damages because ñ Well, maybe the other side can help me out on that as to what the evidence did show. Yes, Your Honor. And to address sort of the related issue of non-economic damages and whether the government can recover them, here the government has rooted its measure of recovery in the idea that it's non-economic and the government has acknowledged it is a non-economic measure. But the government has cited no case that has ever recognized the government can recover a non-economic measure of damages. And non-economic damages are those that have been applied in cases of an individual's feelings or pain or suffering. It is a wild step to say that the government has emotions or some ability to recover emotional distress-type damages. Well, it's not emotional distress damages. It's damages to natural resources. Absolutely. The government certainly takes the position that these are not emotional distress damages. They're just non-economic damages. But the government can only analogize to cases dealing with emotional distress damages or annoyance and discomfort damages or other damages that individuals recover. But as I read California law, it is not quite so protective of defendants as you would suggest. That is, as I understand the argument you're now making, there has to be an economic impact on the government from this harm. And I don't think that that's what California law is. And I'll come back to the example I gave you. If this is a forest that's not being owned by the United States for economic purposes, and so the fact that it's burned imposes no economic burden on the government beyond the firefighting and so on, which is not an issue here, your position then seems to be the government doesn't get any money. I mean, you come back to the argument that I think you disown. So I'm trying to figure out where you are on take a forest that has no economic value to the government, not going to sell the trees and so on. And you're saying that they can or can't get damages in that circumstance. In that situation, accepting the hypothetical as it is, the government could not recover damages because there's no compensable value. Yeah, but that seems to me just wrong under California law. There are values that are not going to be compensable. And I believe California law supports that, because what California law requires is a rationally ascertainable value of those damages. So the government... Value doesn't necessarily mean economic value in the sense of resale. The government's going to make money from it. Value is not identical to the term economic value. And I agree that value does not have to be resale value. I believe value does have to be economic value, because otherwise the requirement of showing value is read out of the case, because then all the government, as all the government did in this case, all the government did was to show the fact of harm to the property. And without evidence of what the value of that harm is, then the requirement that the cases are repeatedly adopted, that there be at least some rationally ascertainable value, that requirement is read out of existence, because only the fact of the harm has been shown. Okay. Why don't we open the government, and you've got some time to respond. Thank you, Your Honor. Good morning, Your Honors. Leon Wideman and Abraham Meltzer to the United States. Please, the Court. There can be no question that under California law, the United States is entitled to what is termed here as non-economic damages. The California Health and Safety Code, 13007, which we brought this afternoon, provides that we can recover all damages, any damage. What's significant also is California Civil Code 1431.2 provides that we can recover for property damage in two ways. There's a Section A and a Section B. Section A lists specific, quote, economic damages, which California has termed economic. That includes, by the way, loss of use of property. So we could have argued that as to the jury, that part of the damage to the government were economic damages for the loss of the use of this 18,000 acres, but we didn't. So that's why, for the purpose of argument, we've conceded that it's non-economic. Section B says there are non-economic damages for property damage. And it lists several, but it also has language in there that plaintiff, excuse me, appellant left out of their brief. It says, including but limited to. So the California Code says for loss of property damage, the government is entitled to economic damages and non-economic damages. And that could include various things, but it is not limited to the examples they gave. This is a perfect example of the type of damage that can we recover for. What evidence did you put into the record to help the jury arrive at its calculation? Well, I won't go through all the testimony about the damage, but. . . Well, I asked you, what evidence did you put in to help the jury arrive at its calculation? The evidence your author testified is to the loss of use of the property, 18,000 acres for two years. And as the court, and that's just one part of it, but as the court recognized, the jury may have picked at $16,000. . . $1,600. . . $1,600 for two years per acre, which comes out to about a little over $70 a month per acre of property. They could have used that. Perfectly reasonable. So tell me again what that evidence was. She testified that this was Watershed, Chaparral, and Page. This was the first fire recorded history. That it burned and destroyed, she testified, 20,000 acres. Dramatically increased erosion. There was large sediment flow. It would take 20 years to fully recover. There were non-native grasses that have infiltrated it that would be a great risk for future fires. And I'll mention something about the non-native grasses in a moment, Your Honor. That it was closed to one year for all hikers, horseback riders, off-road vehicles, and two years for horseback and off-road vehicles. And then Dr. Fisher testified about the loss of the habitat of the frog. That it decreased breeding population by about 80%. . . And then Darrell Vance testified about the Hazel Mining Camp, the historical importance, how that was destroyed. What the government also gave the jury is economic hook. Now, this is separate damage and something that was not appealed. We proved their damages. That there were emergency erosion requirements to prevent some erosion in part of that forest. Not all of it, but very part of it. And the jury heard evidence that that cost $529,000 just for a limited erosion to create some protections. We also provided testimony on resource damages, which was, again, a separate damage calculation that was not appealed. The jury heard evidence that for just a 48-acre parcel out of this 16,000 acres, 18,000 acres, that it cost $320,000 to remove an invasive bamboo. So even if you calculated that at $8,000 an acre, you multiply it by the entire amount that was damaged, if we had to go in and place all the native grass and bring it back to its natural habitat, that would have, we would have asked for a judgment of $114 million for that. So the jury did have an economic hook to determine what the damage was. But you specifically argued as to the non-economic damages that is non-economic. So how can the jury use an economic hook to calculate non-economic damages? Because the California statute allows us to do that, Your Honor, and the jury was given that hook. This happens all the time. You know, the court recognized in personal injury cases, juries make this decision. And in the case that counsel cited as to scrap of spurnoff, there is no value for that except for his own value. The jury is allowed to make that determination. There are two cases that are very instructive that are somewhat related. And these are United States Supreme Court cases, and they're in the antitrust sector. And these are older cases. Well, your adversary cited one that was 100 years old, so I guess age is no bar. But in Bigelow v. RKO Radio Pictures, which is 327 United States, 1817, in 1946, and that cited Story Parchment Paper Company v. Patterson Paper Company, 282 U.S. 555, 1931. These were antitrust cases. And these were monopolization cases. In that case, the problem was, is how do you prove the damage? And the Supreme Court said, juries are allowed to act on probable and inferential as well as upon direct and positive proof. Any rule would allow the wrongdoer to profit from his wrongdoing at the expense of the victim. Failure to apply would mean the more grievous the wrongdoing, the wrongdone the less likely there would be a recovery. In the Story Parchment Case, it said, it would be a perversion of fundamental principles of justice in a case like that where damages are difficult to prove to allow the defendant to profit from the fact that damages are difficult to prove. So it's the whole idea that a jury can hear this type of evidence, hear the damages, and then come up with some idea as to what the value of that property is, is part of our system of jurisprudence in the state side and in the federal side. But to be clear, we're looking at California law. We're not looking at federal antitrust law. You're bringing that in by analogy. We're looking at California law, and we're looking at, except that, as I said, in the main case we cite was the Eastern District of California case that went through its entire history of California and made the same determination that the government can require for this type of environmental damage in this setting when there's a forest fire. So we do have federal law that supports our argument that California allows us this kind of recovery. And as I said, it goes back to the Health and Safety Code that provides that we can recover from this type of damage. Was there any evidence about the value of forests as clean air purifiers and using up some of the carbon dioxide that's floating around? I don't believe there was that evidence, Your Honor. The public does have an interest as a kind of a beneficiary of the national forest in the clean air and clean water aspects of maintaining our forests. Absolutely, Your Honor. And as I said, Mr. Arthur testified about how it was the recreational area for Southern California, for the population within 50 miles of the national forest, how it creates streams, how it serves the public, how it is used by the public for various purposes. We did have proof of evidence in the Red-Legged Frog how that habitat was diminished and how those animals, those bat-protected species, was killed. As for the mining camp, Your Honor, if CB&I had a contract to put in a power line at the base of Half Dome in Yosemite and had negligently caused a displacement and knocked off the base of Half Dome, or if they had, and we have some evidence in other fires that California condors died, but if they had destroyed 80% of the breeding population of California condor, I don't think there would be any question that they could argue that we wouldn't be entitled to, the government, the people of the United States wouldn't be entitled to damages for that type of violation. There is a case, a similar case, and the government is not alone in this type of a claim. We have a similar case that we're defending in the Southern District of California now. It's a Kishon Indian tribe versus the United States. In that case, the federal government was placing power lines through the Indian reservation, the Kishon reservation, and allegedly damaged some archaeological sites that were special to the Indians, to their people. If the appellant is correct, then the Kishon could not collect from the United States for the damage for their archaeological sites, because it's non-economic damages. It's something that would be hard to value. However, it's a type of damage that juries value every day. They do it in cases with paraplegics. They do it in cases with lost diaries. They do it in cases with lost reputation. This is not a novel idea. It's just that the government's interest in property is very special to protect it for the public, for use, and for protection of native species. This is not a new problem, and I gather that there have been some cases in which there have been settlements and so on. Were any of the settlements and other cases introduced as evidence? No, Your Honor. As a matter off the record, we just settled a case involving a fire that included some value for economic damage, but it's not part of this record. But no evidence of those settlements was introduced. To answer the court's earlier question, there was a private case that was cited in this, and we attempted to introduce that case in the district court as to a ranch that was also burned as a result of this fire, and the court precluded us from introducing that evidence to the jury. I don't think that was error. As I said, the jury had plenty of facts and plenty of economic hook to give the value that they gave here. They're the best people to understand what it is worth to the public to go onto the mountains and hike and use their off-road vehicles and go horseback riding. That's what juries do. There's a case in the circuit court for the D.C. Circuit. It's the State of Ohio versus the Department of Interior. Ten states, including California, sued relating to some regulations that the Department of Interior formed as to the recovery for environmental damage in cases of oil spills. In that case, at first the Department of Interior said that it will be the market value. We'll look at the market value of where it was destroyed, and the circuit court for the D.C. Circuit said no, market value is not enough. When you come to economic damages, there can be a lot of other measures. In that case, there is a trustee that has to determine market value, and the regulations provided that the trustee would create the market value for this environmental damage. And the trustee used a model. It's called, excuse me, there are all these terms. Let me get it correct. No, I'm looking at my brief. It's not in our brief, Your Honor. It's not in your brief? No, this is an example to answer one of your questions. All right, but I'm asking you what page of the case you're referring to. Your Honor, I will, as soon as I find my reference. Use value? Is that what you're talking about? No, no, I'm talking about, it's not in our brief. It's the State of Ohio v. Department of the Interior. It's 880-Fed 2nd, 14th. Right. I have the case. I'm asking you, is the term that you're searching for use value? No, Your Honor. It's, it's, well, let me, I'll find the term. But what the term means is that the trustee hired an expert. And the expert went out and surveyed the public as to what the loss of the value of this property would be used for. Because he didn't have a jury. The trustee, or he or she, did not have a jury available. So they surveyed the public to say, what would the value, the loss of this value of the property be? And that's how, and the D.C. Circuit said, that's okay. It's not the mandatory, but it's okay. But that's the point that opposing counsel is making, that you didn't present any evidence like that to support or to assist the jury in coming up with the damages. And, and the argument, Your Honor, in the Ohio case, which was included California, they created this survey as a surrogate for a jury. We didn't, it wasn't a trial. There was no jury. So instead, instead of having a jury, you go out and poll people. And you ask the public, what does it mean to you to lose this forest for 90 days? Or a year? Or two years? And, and the D.C. Circuit said, that's okay. That's, that's the point, though. The point is, there was no evidence like that presented to the jury in this case. But, and the point, and Your Honor, if I may, the point is, Mr. Northrop testified that people use this for hiking. They use it for horseback riding. They use it for off-road vehicles. It's, the jury is perfectly positioned to determine what is the loss of that value. Otherwise, you would call an expert to take a survey of the public to tell a jury exactly what they think. And you don't need that. In the state of Ohio case, it was, the survey was a surrogate for having a jury. To do what you're saying, that the jury is doing what the survey did in the Ohio case. Exactly right. I got it. And do we know what the survey people were told? Were they given any economic numbers? Or were they just said, what's it worth to you? According to the decision, Your Honor, and that was in debate. The debate is, what questions are the jury going to be asked? And the questions are, what is it worth to you? And how are you going to ask the question as to what is it worth to you to not be able to use this property for two years? What is it going to be worth to you to lose an eagle, the death of an eagle? And the questions were difficult to ask. And that's why juries do the same thing without having to get into the details of those questions. If there are no other questions, Your Honor. Okay. Thank you very much. You've saved some time. Thank you, Your Honor. In the last situation that counsel was describing, there was apparently an expert who conducted a survey. And so the question is whether this court is going to adopt a new measure of damages, which will dispense with the expert altogether, when the reason to have experts is because there are things that lay people on the jury are not familiar with, such as the value of environmental resources. But what the expert, at least, I've not read that case. I'm going to go read it. And I'm not sure how directly relevant it is to what we've got here. But as I understand what was just told to me, the expert there treated the general public members who were being surveyed as surrogates for the jurors, and he's merely reporting what the surrogate jurors are giving him as the value. So it's not extra testimony as to what it's worth. It's extra testimony as to what the members of the public said it was worth. And at a minimum – And you're asking for a different kind of expert. Well, here the government didn't present any expert to quantify these damages, even someone who would have applied his own knowledge and understanding. Well, how do you quantify the damages to, for example, extensive loss of habitat to a red-legged frog? And in the United States v. Union Pacific case, the government designated such an expert witness. The government had that expert apply a habitat equivalency analysis to come up with an economic value for those damages. The government is doing this in other cases. And tell me what a habitat equivalency analysis is. It is a theory, and it wasn't put in evidence in this case. But the theory is that if you have a forest fire that burns, say, 100 acres of this forest, then one way to value that damage is to look at what it would cost to prevent a forest fire elsewhere. So there are ways, in other words, to come up with – Is that the only way, though? You said that's one way to do it. Is that the only way? No. I don't believe that's the only way to – and without addressing whether that would have worked in this case, that's certainly not the only way to prove economic damages for a forest fire. The problem I have with your argument is, you know, in the context of personal injury, for example, somebody loses a limb. A jury is asked to decide to put a dollar amount on that loss of limb. And so the jury goes in and puts a dollar amount on it, sometimes with expert witnesses, sometimes with no expert witnesses. Why is this any different? Because over the 100 years or more of common law, the courts have decided it is different, because we want to have as much certainty as we can in our legal system. We want to have predictable results. We don't want to tell the jury just to make up a number. But how is that different from the jury coming to a number on loss of limb and how much that's worth to somebody who's lost a leg or lost an arm? I don't understand how you can make a distinction between those kinds of decisions that a jury has to make in those contexts. And the distinction is that in that situation, first, there's just been a policy drawn at common law over 100 years that would treat property damages differently than personal injury damages. And second, there really is no way to quantify an economic value for emotional distress. But California, it's not emotional distress. Loss of a limb is separate and apart from the emotional distress that accompanies it. Those are two different things. I apologize. You can have loss of limb and maybe no emotional distress. If the evidence then in that case would be, for example, economic value, then that would have to be presented by evidence of value. I thought the court was referring to the emotional distress of the lost limb. No. But lost wages, there would be economic evidence of lost wages. If there was loss of limb. A loss of limb doesn't necessarily equate to lost wages. I mean, people get money just for losing a limb itself, even if they weren't employed. Yes, for the pain and suffering. Not necessarily for the pain and suffering, for just not having a limb. What is the value of life with four limbs as opposed to life with three limbs? And I believe California generally looks at that as a non-economic pain and suffering emotional distress of the lost limb. And that is different than the burning of a tree, because even if you can't resell the tree, you can still calculate an economic value for restoring, replanting, for all the things you can do to fix the damage following the fire. Thank you. Thank you very much. Thank both sides for your argument. United States v. CBI. Constructors now submitted for decision. The next case and last case on the argument calendar this morning, G.E.C.C.M.C., 2005, C1, Plummer Street, Office L.P. versus J.P. Morgan Chase Bank, N.A.
judges: Goodwin, Fletcher, Rawlinson